UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
PENTAGEN TECHNOLOGIES : 
INTERNATIONAL LIMITED, :
:
                Plaintiff, :
:
  -against- :        93 Civ. 8512 (GEL)
:
CACI INTERNATIONAL INC., et al., :
:
                Defendants. :
:
------------------------------------------------------------x
:
PENTAGEN TECHNOLOGIES :
INTERNATIONAL LIMITED, :
:
                Plaintiff, :
:        94 Civ. 0441 (GEL)
  -against- :
:        **OPINION AND ORDER**
CACI INTERNATIONAL INC., et al., :
:
                Defendants. :
:
------------------------------------------------------------x
:
PENTAGEN TECHNOLOGIES :
INTERNATIONAL LIMITED, :
:
                Plaintiff, :
:        94 Civ. 8164 (GEL)
  -against- :
:
J.P. LONDON, :
:
                Defendant. :
:
------------------------------------------------------------x

Ambrose M. Richardson III, New York, New York,
for plaintiff.

Amy Lester, Steptoe & Johnson LLP, New York,
New York, for defendants.

GERARD E. LYNCH, District Judge:

Plaintiff Pentagen Technologies International Limited ("Pentagen") moves pursuant to Fed. R. Civ. P. 60(b)(6) to vacate final judgments entered by this Court (Hon. Michael B. Mukasey, United States District Judge) in 1996. The motion will be denied.

## BACKGROUND

The sorry history of this litigation would take far more space to detail than it is worth. Suffice to say that Pentagen, the owner of a software program called "Mentix," has pursued claims against defendant CACI International Inc. and related individuals and entities (collectively, "CACI"), and against the United States Government, for conversion, fraud, false claims, RICO violations, copyright infringement or other violations in at least ten separate actions in three United States District Courts,[1] the Court of Federal Claims,[2] and on appeal to

---

[1] Pentagen Technologies Int'l Ltd. v. United States, No. 01 Civ. 3078 (SHS) (S.D.N.Y.) (alleging conversion and breach of constructive trust under Federal Tort Claims Act); United States ex rel. Pentagen Technologies Int'l Ltd. v. United States, No. 00 Civ. 6167 (DAB) (S.D.N.Y.) (alleging misconduct under False Claims Act); Pentagen Technologies Int'l, Ltd. v. United States, No. 98 Civ. 1090 (JES) (S.D.N.Y.) (alleging litigation misconduct in violation of False Claims Act); United States ex rel. Pentagen v. CACI, Int'l Inc., No. 96 Civ. 7827 (RWS) (S.D.N.Y.) (reasserting that CACI had filed false claims with the United States) (dismissed by 1997 WL 473549 (S.D.N.Y. August 18, 1997)); Pentagen Technologies Int'l, Ltd. v. J. P. London, No. 94 Civ. 8164 (MBM) (S.D.N.Y.) (alleging violations of state law by fraud, negligence, breach of fiduciary duty); Pentagen Technologies Int'l Ltd. v. CACI Int'l Inc., No. 94 Civ. 0441 (MBM) (S.D.N.Y.) (alleging inter alia unauthorized use of copyrighted material, wanton and willful infringement of trademark and copyright, false claims against the United States, conversion, violations of New York and Virginia criminal statutes); United States ex rel. Pentagen v. CACI, Int'l, Inc., No. 94 Civ. 2925 (RLC) (S.D.N.Y.) (alleging that CACI had filed

three different circuits.[3]  It has achieved no success, though it has accumulated characterizations of its arguments as "frivolous"[4] or "ridiculous,"[5] sanctions for abusive litigation tactics,[6] and injunctions prohibiting it and its former counsel from filing any more cases.[7]  Pentagen's claims,

---

false claims with the United States); Pentagen Technologies Int'l Ltd. v. CACI Int'l Inc., No. 93 Civ. 8512 (MBM) (S.D.N.Y.) (alleging same federal claims as in 94 Civ. 0441); see also CACI In'tl Inc. v. Pentagen Technologies Int'l, Ltd., No. 93-1631-A (E.D. Va.) (seeking declaratory judgment of CACI's nonliability for copyright and trademark violations and judgment of Pentagen's liability and damages for breach of contract, tortious interference, and defamation); see also Pentagen Technologies Int'l, Ltd. v. Comm. on Appropriations, No. 98 Civ. 0047 (GK) (D.D.C.) (seeking to compel production of congressional investigations reports purportedly relevant to plaintiff's Mentix-related claims).

[2] Pentagen Technologies Int'l, Ltd. v. United States, No. 97-245 (Fed. Cl.).

[3] Pentagen Technologies Int'l, Ltd. v. United States, 63 Fed. Appx. 548, 2003 WL 1977386 (2d Cir. 2003) (affirming order of sanctions and injunction from further litigation in No. 98 Civ. 1090 (JES) (S.D.N.Y.)); United States ex rel. Pentagen v. CACI, Int'l, Inc., 172 F.3d 39 (table), No. 97-6326, 1999 WL 55259 (2d Cir. 1999) (affirming dismissal of No. 96 Civ. 7827 (RWS) (S.D.N.Y.)); Pentagen Technologies Int'l, Ltd. v. Comm. on Appropriations, 194 F.3d 174 (table), No. 98-5533, 1999 WL 515477 (D.C. Cir. 1999) (affirming dismissal of No. 98 Civ. 47 (GK) (D.D.C.)); Pentagen Technologies Int'l, Ltd. v. United States, 175 F.3d 1003 (Fed. Cir. 1999) (affirming dismissal of No. 97-245 (Fed. Cl.)); CACI In'tl, Inc. v. Pentagen Technologies Int'l, Ltd., 70 F.3d 111 (table), Nos. 94-2058, 94-2220, 1995 WL 679952 (4th Cir. 1995) (affirming E.D. Va. rulings in all respects).

[4] Pentagen Technologies Int'l, Ltd. v. United States, 172 F. Supp. 2d 464, 473 (S.D.N.Y. 2001).

[5] United States ex rel. Pentagen Technologies Int'l Ltd. v. CACI Intern., Inc., No. 94 Civ. 2925 (RLC), 1996 WL 11299, *16 (S.D.N.Y. Jan. 4, 1996).

[6] Pentagen Technologies Int'l, Ltd. v. United States, 63 Fed. Appx. 548, No. 02-6061, 2003 WL 1977386 (2d Cir. 2003) (affirming order of sanctions and recommending expansion of injunction from litigation); In re Joel Z. Robinson, 99 F.3d 1131 (table), No. 95-2506, 1996 WL 597829 (4th Cir. 1996) (affirming order of sanctions); Pentagen Technologies, 172 F. Supp. 2d at 473-74.

[7] CACI Int'l, Inc. v. Pentagen Technologies Int'l, Ltd., No. 93-1631-A (Hon. James C. Cacheris, J.) (E.D. Va. Apr. 10, 2002) (unpublished and unavailable in electronic databases); Pentagen Technologies, 172 F. Supp. 2d at 474.

in the instant actions and in most of the other cases discussed, derive from its contention that CACI and the Government developed a derivative version of Mentix.

Most of these repeated litigations can be ignored for present purposes. The judgments in the present case dismissed three consolidated actions brought by Pentagen against CACI based on a characteristically thorough and carefully-reasoned opinion by Judge Mukasey. Pentagen Technologies Int'l, Ltd. v. CACI Int'l Inc., No. 93 Civ. 8512 (MBM), 1996 WL 435157 (S.D.N.Y. Aug. 2, 1996). Judge Mukasey reached the following conclusions:

1. Pentagen's federal claims of copyright and trademark infringement were precluded by a final judgment of the United States District Court for the Eastern District of Virginia. CACI Int'l Inc. v. Pentagen Technologies, Ltd., No. CV-93-1631-A, 1994 WL 1752376 (E.D. Va. June 16, 1994) (Hon. Leonie M. Brinkema, J.). 1996 WL 435157 at *9. This preclusion extended to Pentagen's claims against Jack London, CACI's then-president, although London was not a party to the Virginia action, because he was in privity with CACI. Id. at *17.

2. Pentagen's claim that CACI had violated the Major Fraud Act, 18 U.S.C. § 1031, was precluded because Congress had not authorized a private right of action under that statute. Id. at *11-*12. Its claims that CACI had violated various provisions of the New York Penal Law were dismissed for similar reasons. Id. at *15-*16. Its claims that CACI had violated Virginia's criminal law were dismissed because they were based on "fictitious" or "phantom" provisions of the Virginia Criminal Code that did not actually exist. Id. at *16.

3. Pentagen's claim for conversion was preempted by the federal Copyright Act. Id. at *13-*14.

4. Pentagen's claim for misappropriation of trade secrets – which was not in fact asserted in any of its complaints – was dismissed for failure to state a cause of action, because "Pentagen has not alleged any facts to support a finding that CACI owed Pentagen a duty of confidentiality." Id. at *15.

Pentagen appealed the dismissal, but withdrew the appeal without filing a brief, and the Court of Appeals dismissed the appeal on May 25, 2000.

## DISCUSSION

Pentagen now moves to vacate Judge Mukasey's decision pursuant to Fed. R. Civ. P. 60(b)(6), which permits a court to "relieve a party . . . from a final judgment" for "any other reason [besides such matters as mistake, newly discovered evidence, or fraud] justifying relief from the operation of the judgment." This Court has summarized the law governing relief from judgment under Rule 60(b):

> Rule 60(b) is designed to strike a balance between serving the ends of justice and preserving the finality of judgments. A motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances. In addition to demanding that the movant show exceptional circumstances, the courts of this circuit also require that the evidence in support of the motion be highly convincing, that the movant show good cause for the failure to act sooner, and that no undue hardship be imposed on the other parties as a result.

Freedom, N.Y., Inc. v. United States, 438 F. Supp. 2d 457, 462 (S.D.N.Y. 2006) (citations and internal quotation marks omitted).

While any motion under Rule 60(b) requires "exceptional circumstances," this requirement applies with special force to motions brought pursuant to the residual catchall clause of Rule 60(b)(6). Where a party seeks to vacate a judgment based even on such compelling

5

circumstances as newly discovered evidence or fraud, the motion must be made within one year after the judgment was entered. Fed. R. Civ. P. 60(b). Subsection (6) provides no such time limit. Accordingly, courts have been careful to prevent Rule 60(b)(6) from becoming a vehicle to evade the requirements of the more specific subsections of the rule. As the Second Circuit held in United States v. Int'l Brotherhood of Teamsters, 247 F.3d 370, 391-92 (2d Cir. 2001), "if the reasons offered for relief from judgment can be considered in one of the more specific clauses of Rule 60(b), such reasons will not justify relief under Rule 60(b)(6)."

To the extent that Rule 60(b) permits collateral attacks on judgments based on fraud or newly-discovered evidence to be made outside the one-year window applicable to motions under Rule 60(b)(2) and (3), "the type of fraud necessary to sustain such an [attack on] the finality of a judgment is narrower in scope than that which is sufficient for relief by timely motion" under the rule. Gleason v. Jandrucko, 860 F.2d 556, 558 (2d Cir. 1988). Fraud upon the court, which is required for such an attack to succeed, is "limited to fraud which seriously affects the integrity of the normal process of adjudication," id. at 559, includes "only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases," Kupferman v. Consol. Res. & Mfg. Corp., 459 F.2d 1072, 1078 (2d Cir. 1972), and must be established by "clear and convincing evidence," King v. First American Investigations, Inc., 287 F.3d 91, 95 (2d Cir. 2002). See also Hadges v. Yonkers Racing Corp., 48 F.3d 1320, 1325 (2d Cir. 1995).

Pentagen's motion clearly cannot meet these standards. While Pentagen's lengthy submission is hardly a model of clarity, its central contention is that in 2000 it discovered new

evidence that the Government had tested a derivative version of Mentix in 1991, and that this evidence radically altered the factual picture relevant to its claims, and demonstrates that CACI misrepresented certain facts to the Court. (P. Mem. 2-3; P. Reply Mem. 2-4.) But Pentagen's motion discloses on its face that this new evidence, and any evidence of fraud allegedly committed by anyone in withholding it from this Court, is presented here far too late, and in any event has no bearing on Judge Mukasey's decision dismissing Pentagen's claims.

    First, the motion is untimely. Pentagen's motion is in essence a claim based on newly-discovered evidence or fraud, and therefore should properly be brought under Rule 60(b)(2) or (3), which are governed by a one-year limitations period. Teamsters, 247 F.3d at 391-92. This motion is brought more than ten years after judgment was entered. Even if the motion were properly made under Rule 60(b)(6), it would nevertheless have to have been brought in a timely manner. See Rodriguez v. Mitchell, 252 F.3d 191, 201 (2d Cir. 2001) (holding that delay of three and one-half years in bringing Rule 60(b)(6) motion was unreasonable). The centerpiece of Pentagen's claim of fraud is testimony given by one Edgar Brasseur in a deposition in related litigation in England. But this testimony was given in 2000. (See, e.g., P. Reply Mem. 3: "2000 was the watershed year in which [Brasseur] was finally deposed"; "Brasseur's testimony established conclusively that a 3090 MVS version of Mentix existed and was tested by the Government.") Pentagen filed this motion in November 2006 and provides no explanation whatsoever for failing to have filed until more than six years after the allegedly crucial new evidence was uncovered.[8]

---

[8] Essentially the same arguments, based on the same Brasseur testimony, were presented to the Eastern District of Virginia in 2002 in a Rule 60(b) motion directed at an earlier decision of that court, and the court found the motion untimely because "Pentagen . . . waited almost two

Second, as is evident from the brief summary provided above, Judge Mukasey's opinion in this case was not based on any factual representations made by CACI. Nothing in that opinion turns on any factual conclusion about whether the Government or CACI tested versions of Mentix in 1991, or relies on any evidence or representation by CACI on that subject. Indeed, the judgment of this Court did not rest on any facts about Pentagen's underlying claims at all. Most of the allegations were dismissed for failure to state a claim on purely legal grounds that accepted as true the facts of Pentagen's complaint; the remainder were dismissed as precluded by the Virginia judgment.

Pentagen appears to concede as much. Its briefing hardly mentions Judge Mukasey's ruling (to which the instant motion is ostensibly addressed), and instead focuses primarily on explaining why, in its view, the 2000 evidence undermines the Virginia decision. (P. Mem. 2-3, 5-12, 14, 20-22, 25, 27-32; P. Reply Mem. 5-6, 7, 9-10.) But even if Pentagen were correct that a Rule 60(b) motion directed to the Virginia decision would have merit (and this Court has no reason to think that it would), this Court has no power to grant a motion undoing the Virginia judgment, nor any conceivable reason to revoke its prior ruling giving that judgment preclusive effect. This is particularly so given that Pentagen has already made such a motion in Virginia and been rebuffed. In April 2002, Pentagen made in the Eastern District of Virginia essentially the same motion it has now made here. The District Court there not only denied the motion and awarded attorneys' fees and costs to CACI, but found Pentagen's position sufficiently meritless to warrant an injunction prohibiting Pentagen "from filing or attempting to initiate any new

---

years to bring this supposedly new evidence to the attention of this Court. CACI Int'l, Inc. v. Pentagen Technologies Int'l Ltd., No. 93-1631-A, at 8 (E.D. Va. Apr. 10, 2002) (unavailable in electronic databases). The motion has not become more timely in the intervening four years.

lawsuit . . . in . . . the Eastern District of Virginia against . . . persons or entities who have been [its] adversaries in past proceedings, without first obtaining leave." CACI Int'l, Inc. v. Pentagen Technologies Int'l Ltd., No. 93-1631-A at 1 (Hon. James C. Cacheris, J.) (E.D. Va. Apr. 10, 2002) (unavailable in electronic databases); see also No. CV-93-1631-A, 2002 WL 32843931 (E.D. Va. Aug. 29, 2002). To the extent that Pentagen's argument rests on some convoluted proposition that the Virginia judgment is somehow *not* entitled to preclusive effect because that judgment was limited to particular issues, any such argument is not dependent on any new evidence or alleged fraud, and could and should have been made in responding to CACI's original motions.

Thus, Pentagen has shown no basis whatsoever that would justify reopening the litigation in this Court or vacating the judgment entered by Judge Mukasey in 1996.

## CONCLUSION

Pentagen's motion pursuant to Rule 60(b)(6) is denied.

SO ORDERED.

Dated: New York, New York
February 23, 2007

GERARD E. LYNCH
United States District Judge